**GULF COAST STATE BANK, Appellant,**

v.

**J. C. EMENHISER et al., Appellees.**

**No. 943.**

Court of Civil Appeals of Texas, Tyler.

Nov. 18, 1976.

Leroy McCall, McCall & McCall, Hamshire, Harry S. Long, Beaumont, for appellant.

George A. Weller, Weller, Wheelus & Green, Beaumont, John H. Kennamer, Krist & McConnico, Houston, for appellees.

MOORE, Justice.

This is a suit by a bank to recover funds advanced to an alleged agent of the payee on a sight draft which subsequently proved to be uncollectable. Plaintiff, Gulf Coast State Bank (Bank), brought suit against defendants, J. C. Emenhiser, a rice farmer; Lillian Emenhiser, his divorced wife; and their landlords, hereinafter referred to as the Doornbos defendants. The Bank alleged that on March 13, 1969 a sight draft in the amount of $16,255.21, payable to "Gulf Coast State Bank a/c J. C. Emenhiser," drawn on Rex Rice Company, Inc., Eunice, Louisiana, was presented to the Bank for collection by the defendants acting by and through their agent, Waldo Hebert; that pursuant to his request the Bank made a provisional settlement of the draft by advancing Hebert the sum of $16,255.21 in cash; that pursuant to the request of Hebert the Bank then issued two cashier's checks in the amount of $12,366.66 and $3,888.55 payable to the Commodity Credit Corporation (CCC) showing Rex Rice Co. and J. C. Emenhiser as the remitters; that Hebert took the two cashier's checks and turned them over to CCC in full and complete payment of a mortgage indebtedness owed by defendants to the CCC on a large quantity of rice which defendants had previously sold and delivered to Rex Rice Company. The Bank further alleged that after accepting the draft, the Bank duly presented it to the drawee bank for collection in compliance with banking customs but that the draft was subsequently dishonored due to the insolvency of Rex Rice Company; that notwithstanding the Bank's demand for reimbursement of the funds advanced their agent, Hebert, the defendants refused to reimburse it for the amount of the funds advanced. Defendants denied generally the allegations of the petition and specially denied that Hebert was their agent or that they authorized Hebert to present the draft and request a provisional settlement. Defendants further denied that they authorized the Bank to issue the two certified checks to the CCC on their behalf. They denied any knowledge of the transaction between the Bank and Hebert until called upon by the Bank for reimbursement. They further alleged that the Bank acted as a volunteer in advancing the funds to Hebert upon the sight draft and, therefore, acted as a volunteer and advanced its own funds in order to assist Hebert in paying the mortgage indebtedness to the CCC which had been previously assumed by Rex Rice Company as a part of the purchase price of the rice purchased from defendants. Alternatively, the defendants alleged that the Bank was negligent in failing to timely present the draft to the drawee bank, Louisiana Bank & Trust Co. and that such negligence proximately caused the draft to be dishonored.

After a trial before a jury, a take nothing judgment was rendered against the Bank from which judgment the Bank perfected this appeal.

We affirm.

The material facts, for the most part, are not in dispute. The defendants were engaged in rice farming and stored their harvest in the Co-Op at Winnie, Texas, where Waldo Hebert acted as manager. In early February, 1969, defendants entered into an agreement to sell a large quantity of bulk rice to Rex Rice Company for the sum of $24,652.23. The rice stored in the Co-Op was subject to two mortgages held by the CCC in the amount of $12,366.66 and $3,888.55. The CCC would not allow rice to be removed from storage until it issued an "authorization for removal" known as Form 681.[1] On February 17, 1969, the CCC issued the necessary authorizations and mailed a copy to Rex Rice Company. The forms listed the names of defendants and stated in part two that the CCC had authorized a "release for sale" to Rex Rice Company. The evidence shows that the instruction "you will remit" on the authorization form refers to the purchaser and *means that* the purchaser, Rex Rice, was required to deduct the indebtedness from the purchase price and remit the amount of the mortgage indebtedness directly to the CCC. The authorization form dated February 17, 1969, was executed only by a representative of the CCC and not by the defendants or Rex Rice. On February 25, 1969, Rex Rice took delivery of the rice from the Co-Op before any payment to any of the parties had been made. It is undisputed that the defendants negotiated the sale to Rex Rice Company and that the Co-Op did not act as the sales agent for defendants.

After the sale was consummated, Waldo Hebert, the manager of the Co-Op, prepared what is known in the trade as a distribution sheet showing the amount sold; the purchase price; the amount due the rice farmer and the landlord; the amount due Co-Op for storage; and the amount due to be paid the CCC in order to discharge the mortgage. A copy of the distribution sheet was sent to Rex Rice in order that it could make payment accordingly.

On March 4, 1969, Rex Rice undertook to make payment by mailing the Co-Op four sight drafts payable as follows: (1) a sight draft for $144.50 payable to the Co-Op for fees and storage, (2) a sight draft payable to the landlord, the Doornbos defendants, for the sum of $1,178.93, (3) a sight draft in the amount of $7,073.59 payable to J. C. Emenhiser and Lillian Emenhiser, and (4) the $16,255.21 sight draft made the basis of this suit payable "Gulf Coast State Bank a/c J. C. Emenhiser." The latter draft was in the same amount as the total mortgage indebtedness held by CCC. All drafts were

1.

PART 2 - RELEASE FOR SALE          (Seal No(s).:

TO: (Name and Address of Approved Buyer)

Rex Rice Mills, Inc.,
Eunice, La.

| | | |
|---|---|---|
| Quantity mortgaged prior to this release ▷ | 6719. *3978,* | |
| The above borrower is authorized to contract for sale to you this quantity ▷ | 2483. | |
| The quantity remaining in store under the above loan is ▷ | 4236. *1495.* | |

This commodity is mortgaged to CCC. This authorization is subject to the condition that you immediately remit to CCC the amount shown below:

| IF PAID DURING: | | REMIT | IF PAID DURING: | | REMIT |
|---|---|---|---|---|---|
| MONTH | YEAR | | MONTH | YEAR | |
| February | 1969 | $ 12,330.36 | March | 1969 | $ 12,366.66 |

Contact the ASCS County office if the commodity purchased exceeds the quantity covered by this authorization. This authorization shall not be deemed to constitute a release of the mortgage or to release the borrower from liability if the full payment specified above is not received by the ASCS County Office.

| FOR THE ASC COUNTY COMMITTEE | DATE | AUTHORIZATION EXPIRES |
|---|---|---|
| By: (signature) | 2/17/69 | 3/17/69 |

mailed to the Co-Op and the Co-Op in turn mailed the drafts to the respective defendants along with a copy of the distribution sheet showing how the proceeds of the sale were disbursed. It listed the $16,255.21 draft as follows: "Gulf Coast State Bank a/c J. C. Emenhiser $16,255.21." The defendants received their drafts and deposited them for collection in their respective banks in a different city. Waldo Hebert kept the $16,255.21 sight draft in the safe at the Co-Op. On March 13, 1969, he took the draft to Janell Labay, Assistant Cashier of the Gulf Coast State Bank, and requested that she advance him cash on the draft immediately so that he could purchase two cashier's checks totaling $16,255.21 payable to the CCC showing Rex Rice Company and J. C. Emenhiser as the remitters. She testified that she handled many sight drafts for Mr. Hebert and on this occasion he came in and wanted immediate credit on the sight draft to go and pay off the CCC; that at his request she treated the sight draft as a cash item and not as a collection item and advanced cash on the draft because that was the way he wanted it. She repeatedly testified that she treated the draft as if it were a check or cash. She testified that the reason she handled the transaction in this manner was because Mr. Hebert handled numerous business transactions with the Bank in this manner and she usually followed his instructions. She admitted that she did not contact any of the defendants with regard to the transaction and that neither J. C. Emenhiser nor any of the other defendants endorsed the draft nor authorized her to accept the draft on their behalf, nor did they authorize her to treat the draft as a cash item and pay out cash on it immediately. She further testified that she did not enter the draft in her collection register as a collection item and did not send it directly to the drawee bank in Louisiana, but rather sent it out for collection as a cash item as if it were a check and that since J. C. Emenhiser did not have an account at the Bank she did not credit his account with the amount of the draft. Waldo Hebert died before his testimony could be taken. Sam J. Lucas, president of the Bank, testified that Mrs. Labay had authority to issue cashier's checks on sight drafts drawn on Rex Rice Company and to handle the draft in question as a cash item and that the Bank regularly cashed sight drafts drawn on rice companies. When asked who purchased the two cashier's checks prepared by Mrs. Labay and made payable to the CCC, he answered "Rex Rice Company." The evidence shows that the reason the transaction was handled in the foregoing manner was because the CCC would not accept sight drafts or checks in discharge of the indebtedness.

In its brief the Bank explains its conduct as follows:

"This procedure of making the drafts payable to the bank for the account of the farmer was used to enable the Co-op's employee to obtain bank checks made payable to the Commodity Credit Corporation in the amount of each farmer's lien on the batch of rice that had been sold without having to first chase the farmer down and obtain his endorsement on the draft. It must be kept in mind that the Co-op's employee processed many drafts in this manner and the procedure saved the employee a substantial amount of time that would have been lost if he had had to track down each and every farmer who had sold rice through the Co-op subject to a Commodity Credit Corporation Rice Mortgage. * * * Plaintiff bank does not deny that the credit of the payor of the draft, the primary obligor, the rice mill, was behind the payment of the draft, just as the primary obligor of any check or draft would be; * * *"

There is no evidence that the defendants requested the Bank to make a provisional settlement of the draft and there is no evidence that any of the defendants expressly authorized Waldo Hebert to act as their agent in presenting the sight draft to the Bank and causing the same to be converted into cash nor is there any evidence that they authorized him to purchase the cashier's checks payable to the CCC. In an effort to show apparent authority on the part of Hebert, the Bank offered evidence

showing that defendants had sold rice stored at the Co-Op on two previous occasions and that the defendants were given distribution sheets showing the amount of the mortgage indebtedness to be allocated to "Gulf Coast State Bank a/c J. C. Emenhiser" and on both occasions the Bank cashed drafts and delivered to Hebert cashier's checks payable to the CCC in payment of the mortgage indebtedness as was done in this instance. Defendants denied any knowledge of the method employed by Hebert in discharging the mortgage indebtedness on the two previous occasions and the record is devoid of any evidence showing that the defendants knew of the Bank's custom in cashing the sight drafts and issuing cashier's checks to the CCC. Defendants take the position that Rex Rice Company assumed payment of the indebtedness and that the debt discharged was that of Rex Rice and not the debt of the defendants.

By its first point of error the Bank contends that the trial court erred in refusing to allow it to introduce evidence showing that the Bank acted in compliance with its local custom by advancing cash on sight drafts made payable to the Bank for the account of all local rice farmers who had sold rice on which there was an outstanding indebtedness owed the CCC. The Bank argues that defendants must be held to have agreed to govern themselves by the custom and mode of doing business on the part of the Bank whether they had actual knowledge of such custom or not.

■ Defendants objected to the proof of the Bank's local custom on the ground that there was no pleading to support such proof. We have concluded that the proffered testimony was properly excluded. While the Bank's petition contained allegations that the Bank complied with banking customs in presenting the draft for collection, we find no allegations that it was the Bank's local custom to treat all rice farmers' sight drafts in the same manner as it treated the sight draft in question. Moreover, there is no allegations that such local custom was known to defendants.

■ In order for a usage or custom of a particular bank to govern and modify the law in relation to the dealings of the parties, it must appear that such custom was known to the party dealing with the Bank. See 10 Am.Jur.2d Banks, sec. 6, p. 31. There is no evidence whatsoever that the defendants knew of the custom or procedure followed by the Bank in cashing sight drafts drawn on the purchasers of the rice or in issuing cashier's checks to discharge an indebtedness to the CCC on rice which had been delivered to the purchaser. The Bank's first point is overruled.

Under the Bank's pleadings the controlling issue in this case is whether Waldo Hebert was the agent of defendants when he took the sight draft to the Bank and requested and received the sum of $16,255.21 in cash thereon. In order to subject the defendants to liability for reimbursement, the Bank had the burden to prove that Hebert had authority to act for the defendants as their agent. *Cummer Mfg. Co. of Texas v. First Nat. Bank of Center,* 173 S.W. 536 (Tex.Civ.App.—Texarkana 1915, no writ); see generally, 2 Tex.Jur.2d Agency sec. 248 and the cases cited therein.

■ The issue of agency was submitted to the jury in Special Issue No. 3. The jury found that the Bank failed to establish by a preponderance of the evidence that Hebert was the agent of defendants.[2] The Bank has no point of error challenging the finding nor does the Bank have any point asserting that an agency relationship was established as a matter of law. In order for the Bank to establish a cause of action against the defendants, it was essential that the Bank obtain a favorable finding on the issue of agency. As there was no such finding and the Bank failed to challenge the jury's "negative" finding on the agency

**2.** "SPECIAL ISSUE NO. 3: Do you find from a preponderance of the evidence that Winnie Rice Farmers Cooperative Association or Waldo Hebert, acted as agent for J. C. Emenhiser, Lillian Emenhiser and the Dornbosses [sic] in presenting to the Gulf Coast State Bank the draft in question?
"ANSWER: We do not."

issue, it must be held that the Bank failed to discharge its burden of establishing a cause of action against defendants.

Under its eleventh point the Bank contends the court erred in refusing to submit its specially requested issues Nos. 1, 2, 3 and 5. We do not agree with this contention. The requested issues amount to nothing more than a request to have the jury find on various phases or different shades of the issue of agency. As stated, the trial court submitted an issue on agency in Special Issue No. 3. The Bank registered no objection to the form or substance of Special Issue No. 3. Assuming that the requested issues were more accurate than the issue given, a request to give them, not coupled with any objection to the form or wording used by the court, will not be given effect as an objection to the issue as given. *Isbell v. Lennox*, 116 Tex. 522, 295 S.W. 920 (1927); *City of Dallas v. Priolo*, 150 Tex. 423, 242 S.W.2d 176 (1951). Under Rule 274, Texas Rules of Civil Procedure, "A party objecting to a charge must point out distinctly the matter to which he objects and the ground of his objection." The failure of the Bank to object to Special Issue No. 3 as submitted by the court is not cured by requesting other special issues on the same subject even though the requested issues may be correct. *Cimarron Insurance Co. v. Price*, 409 S.W.2d 601 (Tex.Civ.App.—Austin 1966, writ ref'd n. r. e.); *City of Dallas v. Priolo*, supra. Since no objection was made by the Bank to the form or substance of the agency issue, any complaint of the issue was waived.

Under points two through seven and points nine and ten, the Bank asserts that the court erred in submitting numerous special issues and special instructions covering the defendants' defense to negligence on the part of the Bank in failing to send the sight draft directly to the drawee Bank for collection. The jury found that the Bank was guilty of negligence by employing the method it used to collect the draft and that such negligence proximately caused the draft to be dishonored. These issues would arise only if the Bank established the existence of an agency relationship. In view of our conclusion that the Bank failed to discharge its burden to prove agency, we do not reach these points.

The judgment of the trial court is affirmed.