**GULF COAST STATE BANK, Petitioner,**

v.

**J. C. EMENHISER et al., Respondents.**

**No. B–6518.**

Supreme Court of Texas.

Feb. 22, 1978.

Rehearing Denied March 29, 1978.

Harry S. Long and Clint W. Lewis, Beaumont, McCall & McCall, Hamshire, for petitioner.

Weller, Wheelus & Green, George A. Weller, Beaumont, John H. Kennamer, Houston, for respondents.

DENTON, Justice.

This action was brought by Gulf Coast State Bank to recover funds advanced on a sight draft which proved to be uncollectible. There are two controlling questions to be decided. The first is whether as a matter of law the plaintiff as a collecting bank, upon dishonor of the sight draft, was entitled to recover from defendants funds advanced on the draft. The second issue is whether certain special instructions in the court's charge were erroneous, and whether any error therein was preserved. The trial court, based upon the jury verdict, rendered a take nothing judgment against the plaintiff bank. The court of civil appeals affirmed. 544 S.W.2d 722. We agree that the bank has not established its right to recover the funds advanced on the dishonored draft as a matter of law. However, we reverse the judgment of the court of civil appeals and remand for new trial be-

cause of harmful error in the special instructions to the jury.

The plaintiff bank brought suit against J. C. Emenhiser, a rice farmer; Lillian Emenhiser, his divorced wife; and their landlords, the Doornbos defendants. The Emenhisers sold their rice crop through the Co-op at Winnie, Texas, where Waldo Hebert acted as manager. Along with his wife and landlords, Emenhiser executed two mortgages on his 1968 rice harvest to the Commodity Credit Corporation (CCC). Early in 1969, Emenhiser agreed in writing to sell a large quantity of rice to Rex Rice Company (Rex) for $24,652.23. The rice was subject to the CCC mortgage in the amount of $16,255.21, and could not be removed from storage until the CCC issued its "authorization for removal." The necessary authorization was issued in February, 1969, listing Rex as the approved buyer. A copy of it was sent to Rex informing them that the mortgage was not released until the payment due CCC was remitted by Rex.

After the sale was arranged, Waldo Hebert, the manager of the Co-op, prepared a "distribution sheet" showing how the proceeds of the sale were to be allocated. A copy was sent to Rex and on March 4, after it accepted delivery of the rice, Rex mailed four sight drafts to the Co-op. The drafts were drawn by Rex on itself, but were payable "through" Louisiana Bank and Trust Company, Crowley, Louisiana, as follows: (1) $144.50 payable to the Co-op for storage fees; (2) $1,178.93 payable to the landlords, the Doornbos defendants; (3) $7,073.59 payable to the Emenhisers; (4) $16,255.21 payable to "Gulf Coast State Bank a/c J. C. Emenhiser." The Co-op forwarded the first three drafts to the respective payee-defendants along with a copy of the distribution sheet. The drafts were deposited for collection by the defendants in their respective banks. The last draft, which is the basis of this suit, was placed in the Co-op safe by Waldo Hebert.

On March 13, 1969, Hebert presented the sight draft in question at Gulf Coast State Bank to Mrs. Labay, an assistant cashier. At Hebert's request, she advanced him cash in the form of two cashier's checks payable to the CCC, showing Rex and the Emenhisers as remitters. Mrs. Labay treated the draft as a cash item at Hebert's request because he was a regular customer and handled many similar transactions through the bank. The bank president testified that Mrs. Labay had authority to treat the draft as a cash rather than collection item and issue cashier's checks on such drafts. He testified that the bank regularly cashed sight drafts drawn on rice companies and that he considered Rex the "purchaser" of the two cashier's checks payable to CCC. Cashier's checks were required because the CCC would not accept sight drafts. It is undisputed that none of the defendants endorsed the draft or were contacted about it.

Hebert subsequently paid the CCC mortgages with the two cashier's checks. The bank treated the sight draft as a check or cash item and transmitted it to a Beaumont correspondent bank. It then went through a Houston bank before arriving at the Louisiana bank through which it was payable. Due to the insolvency of Rex, the draft was dishonored and returned uncollected. The plaintiff bank brought this suit after the Emenhisers and Doornbos defendants refused to reimburse it.

The bank alleged that the sight drafts had been properly forwarded for payment after a provisional settlement was made with the defendants' agent, Waldo Hebert, to pay the defendants' debt to the CCC. The bank further alleged that after the draft was returned dishonored, the defendants refused to reimburse it. The bank also asserted that it had with its own money discharged defendants' indebtedness to the CCC, and that its handling of the draft as a cash rather than collection item was in accordance with customary banking procedure.

The defendants denied that Hebert was their agent in this transaction. They asserted that the draft was not payable to them or anyone authorized in their behalf; that the bank was not authorized to act as their agent in this transaction; that the bank was negligent in failing to treat the

draft as a collection item by forwarding it immediately by mail to the Louisiana bank; and that the bank was negligent in not inquiring of the Louisiana bank prior to cashing the draft whether Rex had sufficient funds to cover the draft. Based upon jury answers to special issues, the trial court rendered a take nothing judgment against the plaintiff bank.

■ The court of civil appeals affirmed, holding that the controlling issue was whether Waldo Hebert was the defendants' agent when he cashed the sight draft. Since the jury finding of no agency was not challenged, the court of civil appeals concluded that the plaintiff bank failed to establish its cause of action. We disagree with this reasoning.

The plaintiff bank correctly asserts that a finding of Hebert's agency was not an indispensable element of its cause of action. In support of its argument, the bank cites section 4.201(a),[1] which provides:

> Unless a contrary intent clearly appears and prior to the time that a settlement given by a collecting bank for an item is or becomes final . . . the bank is an agent or sub-agent of the owner of the item and any settlement given for the item is provisional. This provision applies regardless of the form of indorsement or lack of indorsement and even though credit given for the item is subject to immediate withdrawal as of right or is in fact withdrawn, but the continuance of ownership of an item by its owner and any rights of the owner to proceeds of the item are subject to rights of a collecting bank such as those resulting from outstanding advances on the item and valid rights of setoff. When an item is handled by banks for purposes of presentment, payment and collection, the relevant provisions of this chapter apply even though action of parties clearly establishes that a particular bank has purchased the item and is the owner of it.

Under this provision, the collecting bank is the agent of the owner of an item until settlement becomes final. *Citizens First*

*National Bank of Tyler v. Cinco Exploration Co.*, 540 S.W.2d 292, 295 (Tex.1976). Emenhiser was clearly the owner and payee here because there was testimony that the draft was made payable to "Gulf Coast State Bank a/c J. C. Emenhiser" only for the convenience of Co-op employees so that they would not be required to track down every farmer who sold rice to obtain his endorsement on the draft. This way, the drafts could be deposited or forwarded for collection by Co-op personnel without the endorsement of the farmer who sold the commodity.

Section 4.212 gives the collecting bank which makes a provisional settlement a right of charge-back or refund from the customer if the item is dishonored. This right of charge-back or refund terminates, however, when settlement for the item becomes final. Settlement becomes final under section 4.211(c)(3) if the bank "fails to seasonably present, forward for collection, pay or return a remittance instrument or authorization to it to charge before its midnight deadline." Thus, the bank as an agent of the payee has the right to refund of credit given on a dishonored draft so long as the bank seasonably presents or forwards the item for collection before its midnight deadline. Section 4.202(a) requires that a bank use ordinary care in presenting an item or sending it for presentment. *Citizens First National Bank of Tyler v. Cinco Exploration Co., supra.* Section 4.204(a) requires that a collecting bank send items by a "reasonably prompt method taking into consideration any relevant instructions, the nature of the item, the number of such items on hand, and the cost of collection involved and the method generally used by it or others to present such items." The collecting bank is therefore under a duty to use a reasonably prompt method of presenting an item or forwarding it for presentment. 2 Bender's U.C.C. Service § 9.08[3][d] (1976).

Both plaintiff and defendants introduced evidence as to the customary method of

---

1. Statutory references are to Tex.Bus. & Comm. Code Ann. (Vernon 1968).

handling sight drafts. The plaintiff bank contends that it established as a matter of law that it had properly presented the draft or forwarded it for presentment, and thus, it is entitled to reversal and rendition of judgment in its favor. We hold that the issue of whether the bank properly presented the draft or forwarded it for presentment was a fact issue for the jury to resolve, and that the bank did not establish it as a matter of law. Therefore, the plaintiff bank is not entitled to rendition in its favor.

In answer to special issues, the jury found that the plaintiff bank failed to act in good faith and to exercise ordinary care in the manner in which it handled the sight draft. The jury also found that the failure to mail the sight draft for collection, as well as the failure to ascertain whether Rex had sufficient funds to cover the draft, was negligent and the proximate cause of the plaintiff bank's loss. Under these fact findings, the provisional settlement on the draft became final and the bank's right to charge-back or refund thereby terminated. However, our action on the second issue of this case which reverses and remands for new trial because of improper jury instructions vitiates these findings. It will be the plaintiff bank's burden on retrial to prove proper presentment or forwarding for presentment as a fact issue.

The second issue in this case concerns the propriety of the special instructions given to the jury in the court's charge. Special Instruction No. 1 instructed the jury that Gulf Coast State Bank was required to "promptly and directly" forward the sight draft to the Louisiana bank for collection, and that if the failure to collect payment of the draft was due to its failure to follow the law, then the plaintiff bank is responsible for the failure to collect. The second special instruction informed the jury that plaintiff bank was required to present the draft to the Louisiana bank "promptly and by the most direct route" by midnight of the next business day after receipt of the draft. The instruction concluded that if the jury found undue delay by the bank resulted in the dishonor of the draft, that the jury should find for the defendants. It then asked the jury if under Special Instruction No. 2 it found for the defendants, to which the jury answered "yes." Special Instruction No. 3 informed the jury of Louisiana law which provided that if the Louisiana bank retained the draft for more than twenty-four hours, it became liable for its payment. The instruction then told the jury that if it should find that if the plaintiff bank had mailed the draft, it would have been paid or held by the Louisiana bank for more than twenty-four hours after presentment, then the jury should find for defendants. The jury was then asked if under Special Instruction No. 3 it found for defendants, to which the jury answered "yes." The fourth special instruction instructed the jury that Rex Rice Company was required under section 9–307(1) of the Uniform Commercial Code to pay the CCC directly for any balance due on the rice mortgage. It further instructed the jury that the plaintiff bank accepted the credit of Rex in issuing payment to the CCC on the sight draft.

■ In its application for writ of error, the bank asserts that each of the four special instructions "was an illegal comment on the weight of the evidence by the trial court, a misstatement of the applicable law, constituted a general charge and amounted to nothing more than a directed verdict for the defendants." The only objection to the special instructions lodged in both the motion for new trial and in points of error in the court of civil appeals, however, was that the special instructions were "a misstatement of the law." In a case in which a motion for new trial is required, a ground of error not distinctly raised in the motion for new trial is waived. Tex.R.Civ.P. 324 & 374 (1977); *Meadows v. Bierschwale*, 516 S.W.2d 125, 130 (1974).[2] Likewise, grounds

2. It should be noted that Rule 324 has been amended and Rule 374 has been repealed, effective January 1, 1978, so that a motion for new trial is generally no longer a prerequisite to appeal in a jury case. Although the preexisting rules are applicable in this case, the asserted grounds of error were also waived under the new rules since they were not raised in the court of civil appeals.

of error not asserted by points of error or argument in the court of civil appeals are waived. Tex.R.Civ.P. 418; *Airway Insurance Co. v. Hank's Flite Center, Inc.*, 534 S.W.2d 878 (Tex.1976).

 While this Court cannot consider on writ of error the points which were waived, our action should not be interpreted as approving either the form or the substance of these special instructions. The instructions violated Tex.R.Civ.P. 277 in that they constituted more than an incidental comment on the weight of the evidence and advised the jury of the effect of their answers. It is not permissible for the trial court to marshal the facts or parties' contentions in an instruction, and then instruct the jury to find for one party if they believe certain facts to be true. *See* Pope and Lowerre, *Revised Rule 277—A Better Special Verdict System For Texas*, 27 Sw.L.J. 577, 588–89 (1973); *Pittsburg Coca-Cola Bottling Works v. Ponder*, 443 S.W.2d 546 (Tex.1969). The jury's concern is to find disputed facts, rather than to achieve a particular result. These instructions were neither helpful to the jury nor proper.

 The plaintiff bank's objection to the special instructions which was properly preserved was that they constituted a misstatement of the law. As stated above, a collecting bank has a duty under section 4.204(a) to send items by a "reasonably prompt method taking into consideration any relevant instructions, the nature of the item, the number of such items on hand, and the cost of collection involved and the method generally used by it or others to present such items." Settlement on the item becomes final and the bank's right of refund terminates under section 4.211(c)(3) if the bank "fails to seasonably present, *forward for collection*, pay or return a remittance instrument . . . before its midnight deadline." (emphasis added) Section 4.202(a) requires that the bank use ordinary care in presenting an item or sending it for presentment. Thus, the statutes provide for a measure of flexibility in the standards applicable to the sending or forwarding of items by a collecting bank. *See* U.C.C. § 4–204, Comment 1.

Special Instruction No. 2 instructed the jury that the plaintiff bank was required to "present" the draft for payment to the Louisiana bank by midnight of the next business day after receipt of the draft. Special Instruction No. 3 stated, in pertinent part:

> If you should find that had the Gulf Coast State Bank at Winnie mailed the draft in question direct [sic] to Louisiana Bank and Trust Company, Crowley, Louisiana, for presentment and such would have been presented at a time when the draft would have been paid or would have been held by the Louisiana bank for more than twenty-four (24) hours after presentment, then you will find for the Doornbos Defendants and the Emenhiser Defendants in this case.

Special Instruction No. 3 clearly gave the impression that the bank was required to forward the sight draft by mail directly to the Louisiana bank, and that the failure to do so was negligence. Special Instruction No. 2 gave the impression that the plaintiff bank was required to "present" the draft (presumably in person) to the Louisiana bank before midnight of the next banking day. The Code does not specifically make such requirements. A collecting bank's duty is to take action by its midnight deadline to present an item or forward it for presentment by a reasonably prompt method in light of the circumstances. Whether the bank acted seasonably is a fact issue on which both sides produced evidence. It is the jury's function to resolve this issue.

A trial court's charge which does not instruct the jury as to the correct law applicable to the facts is improper. *Wichita Valley Ry. v. Williams*, 116 Tex. 253, 288 S.W. 425 (1926); *Irick v. Andrew*, 545 S.W.2d 557 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.); *Forney v. Memorial Hospital*, 543 S.W.2d 705 (Tex. Civ.App.—Beaumont 1976, writ ref'd n.r.e.). The erroneous charge constituted error which was reasonably calculated to cause

454

and probably did cause the rendition of an improper judgment. Tex.R.Civ.P. 503. The judgment of the court of civil appeals is reversed and the cause is remanded for a new trial.