AUSTIN NATIONAL BANK, Appellant,

v.

Vicente Athie ROMO et ux., Appellees.

No.13000.

Court of Civil Appeals of Texas, Austin.

April 2, 1980.

Rehearing Denied May 7, 1980.

R. James George, Jr., Graves, Dougherty, Hearon, Moody & Garwood, Austin, for appellant.

Barry Bishop, Walter Demond, Clark, Thomas, Winters & Shapiro, Austin, for appellees.

SHANNON, Justice.

Vicente and Griesel Athie Romo, appellees, sued the Austin National Bank, appellant, in the district court of Travis County for $17,536.13. After trial to a jury, the district court entered judgment for appellees for $17,536.13.

On August 26, 1976, appellees purchased certificate of deposit number 68082 in the sum of 45,000 dollars from the Austin National Bank. Appellees paid for the certificate of deposit with a check for 562,500 pesos drawn on the Banco Nacional de Mexico and made payable to appellant. On August 26, 1976, the exchange rate was twelve and a half pesos for each dollar, and accordingly, the 562,500 peso check was worth 45,000 dollars.

The certificate issued by the bank provided that the bank promised to pay appellees five and a half percent interest annually on 45,000 dollars beginning August 26, 1976. Appellees permitted the certificate of deposit to remain in "safekeeping" with appellant bank, and the bank gave appellees a receipt evidencing that fact.

Appellant sent the peso check to Banco Nacional for collection. In the meantime, and after August 26, 1976, the government of the Republic of Mexico ordered the devaluation of the peso. Thereafter, Banco Nacional honored the peso check, but appellant bank was accorded credit for only 27,-463.87 in dollars because of the peso's devaluation.

On September 24, 1976, the bank unilaterally issued to appellees certificate of deposit number 68295, back dated to August 26, 1976, in the sum of 27,463.87 dollars. By this action, the bank attempted to cancel the first certificate of deposit.

Appellees pleaded that the bank did not advise them of any conditions on the purchase of the certificate of deposit. Appellees alleged, specifically, that there were no written or printed conditions appearing on the peso check or the certificate of deposit. Because the bank treated the transaction like one for cash, appellees claimed that the bank assumed risks of currency fluctuations.

In its trial pleading the bank set up several defenses: (1) that the parties had agreed that the issuance of the original certificate of deposit was conditional upon the clearance of the peso check and payment of $45,000.00 United States currency by the Mexican bank to appellant bank; (2) that under the Texas Business and Commerce Code, appellant bank, as a collecting bank, acted as agent for appellees, and that, as such, the risk of loss of devaluation fell upon appellees as principals; and (3) that the consideration given for the certificate of deposit failed totally or at least partially because of the peso's devaluation.

The court's charge contained four special issues, only two of which are relevant to this appeal. The jury answered that appellees and appellant bank intended for the bank finally to receive 45,000.00 United States dollars in payment for the original certificate of deposit. The jury refused to find that the parties agreed that appellees would have a certificate of deposit for the amount of dollars that the bank received back from the Mexican bank.

The bank's pivotal point of error is that the district court erred in entering judgment for appellees for the reason that the bank did not bear the risk of loss from the

peso devaluation. This Court is of the view that the point is well taken, and the judgment of the district court will be reversed and judgment here entered that appellees take nothing.

The parties to the transaction, by agreement, could have allocated the risk of loss of a peso devaluation, yet neither the bank nor appellees proved that the parties chose to do so. Accordingly, Chapter 4 of the Texas Uniform Commercial Code must be consulted in an effort to determine the risk of loss in absence of an agreement between the parties.

Section 4.201(a) provides that, unless a contrary intent clearly appears, a bank is its customer's agent in handling an item for collection even though the settlement given by the bank for the item is subject to immediate withdrawal. *Gulf Coast State Bank v. Emenhiser*, 562 S.W.2d 449 (Tex. 1978). One practical result, flowing from the rule continuing the agency status of the collecting bank until its settlement for the item is or becomes final, is that risk of loss continues in the owner of the item rather than the agent bank. § 4.201(a), Comment 4.

In the case at bar, no intent was manifested by the parties that the bank should not act as appellees' agent in handling the peso check for collection. As a result, pursuant to § 4.201(a), the bank acted as agent for appellees during the collection process.

Appellees' argument is that when Banco Nacional paid 562,500 pesos for appellees' check, appellant bank received a final settlement for the item and the agent-principal relationship between the bank and appellees terminated. Appellees' argument overlooks the fact that the Mexican government devalued the peso before Banco Nacional honored the peso check. Pursuant to § 4.201(a), the appellant bank, on the date of devaluation, was only agent for appellees and the risk of loss was still in appellees as owners of the check.

Appellant bank argues that it did not receive full settlement for the peso check because it gave credit to appellees for $45,000 and received in return only $27,463.87.

Because it did not receive full settlement for the check, the bank argues that, pursuant to § 4.212(a) of the Code, it had the right to revoke the provisional settlement given by it for the certificate of deposit and to charge back the loss to appellees. Accordingly, the bank justifies its cancellation of the certificate of deposit for $45,000 and issuance of the certificate of deposit for $27,463.87 as rights conferred upon it by § 4.212(a).

Section 4.212(a) provides in part as follows:

"§ 4.212. Right of Charge-Back or Refund

(a) If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account or obtain refund from its customer . . . ."

Appellees argue in opposition that appellant received no right to revoke settlement and charge back the loss because Banco Nacional did not dishonor the peso check, but instead honored it. Appellees are correct that Banco Nacional did not dishonor the peso check. Nevertheless, under § 4.212(a), "dishonor" of a check is not the only situation in which a bank has the right to charge back. In Uniform Commercial Code Comment 2, it is stated:

"2. Various causes of a bank not receiving final payment, with the resulting right of charge-back or refund, are stated or suggested in subsection (1). These include dishonor of the original item; dishonor of a remittance instrument given for it; reversal of a provisional credit for the item; suspension of payments by another bank. The causes stated are illustrative; the right of charge-back or refund is stated to exist whether the failure to receive final payment in ordinary course arises through one of them 'or otherwise.' "

As the official comment indicates, a collecting bank's right to charge back is not limited to the causes for nonpayment set out in § 4.212(a), and the causes stated in § 4.212(a) are only illustrative. It would seem that under § 4.212(a), as argued by appellant, a collecting bank has the right to charge back whenever it fails to receive full settlement for an item. In the case at bar, the bank did not receive full settlement for the peso check because it gave appellees credit for $45,000, but received credit in return for only $27,463.87. Although Banco Nacional honored the check in pesos according to the terms of the check, appellant bank did not receive full value for the item, and accordingly, had the right to charge back the loss pursuant to § 4.212(a).

Section 4.212(f) is the final provision of the Code that need be considered in this opinion. That subsection provides:

"(f) If credit is given in dollars as the equivalent of the value of an item payable in a foreign currency the dollar amount of any charge-back or refund shall be calculated on the basis of the buying sight rate for the foreign currency prevailing on the day when the person entitled to the charge-back or refund learns that it will not receive payment in ordinary course."

Pursuant to § 4.212(f), the buying sight rate for the foreign currency is employed to determine the loss that the bank has incurred as a result of currency fluctuations. Once the bank has determined the amount of loss under § 4.212(f), § 4.212(a) authorizes the bank to charge back its loss against the provisional credit initially given the customer.

The judgment is reversed, and judgment is here rendered that appellees take nothing.

SMITH, J., not sitting.