**Vicente Athie ROMO et ux, Petitioners,**

v.

**AUSTIN NATIONAL BANK, Respondent.**

No. B–9471.

Supreme Court of Texas.

Feb. 18, 1981.

Rehearing Denied March 18, 1981.

Clark, Thomas, Winters & Shapiro, Walter E. Demond and Barry K. Bishop, Austin, for petitioners.

Graves, Dougherty, Hearon & Moody, R. James George, Jr. and Stephen Jody Helman, Austin, for respondent.

WALLACE, Justice.

This is a suit to recover the loss occasioned by the devaluation of the Mexican peso between the time a check payable in pesos was deposited in a Texas bank and the date of presentment. The trial court, based on a jury verdict, entered judgment for the depositors. The court of civil appeals reversed and rendered judgment for the collecting bank. 598 S.W.2d 30. We affirm the judgment of the court of civil appeals.

On August 25, 1976, Vicente Athie Romo and Griesel Athie Calzada, depositors, purchased a certificate of deposit in the amount of $45,000.00 from Austin National Bank (Bank) and paid for it with a check for 562,500 pesos drawn on Banco Nacional de Mexico. The rate of exchange on that date was twelve and one-half pesos per dollar. The check was sent to the Mexican bank for collection but before the check was honored by the Mexican bank the peso was devalued, resulting in the check being

worth only $27,463.87. On September 24, Austin National Bank received the proceeds of the check and issued a new certificate of deposit in the amount of $27,463.87 and canceled the $45,000.00 certificate which was still in its possession.

The issue before this Court is whether the depositors or the Bank should suffer the loss resulting from the devaluation. This is a case of first impression.

Trial was to a jury which found that the parties intended for the Bank to receive $45,000.00 for the certificate of deposit. The jury failed to find that there was an agreement between the parties that the depositors would have a certificate of deposit for the amount of dollars that the Bank received from the Mexican bank.

■ The controlling statutes are found in Chapter 4 of the Uniform Commercial Code.[1] The first portion of the Code with which we are concerned is Section 4.201(a) which provides:

Unless a contrary intent appears and prior to the time that a settlement given by a collecting bank is or becomes final ... the bank is an agent or sub-agent of the owner of the item and any settlement given for the item is provisional. This provision applies regardless of the form of endorsement or lack of endorsement and even though the credit given for the item is subject to immediate withdrawal as of right or is in fact withdrawn; but the continuance of ownership of an item by its owner and any rights of the owner to proceeds of the item are subject to rights of a collecting bank such as those resulting from outstanding advances on the item and valid rights of setoff.

Comment 2 under this section states:[2]

... The nature of the credit given for an item or whether it is subject to immediate withdrawal as of right or is in fact withdrawn, do not rebut the general presumption.

The fact that the Bank issued an unconditional certificate of deposit for $45,000.00 would thus not rebut the agency relationship. The Comment further states that:

A contrary intent can rebut the presumption but this must be clear. An example of a clear contrary intent would be if collateral papers established or the item bore a legend stating that the item was sold absolutely to the depositary bank.

There is no evidence of any such contrary intent. A Bank employee wrote the figure "$45,000.00" on the face of the check with the explanation that an item must show the amount in U. S. dollars in order to clear the Bank. This is not evidence of a sale to the Bank. See J. Clarke, H. Bailey, R. Young, Bank Deposits and Collections 47 (4th ed. 1972). We hold that at all times pertinent to the transaction the Bank was acting as agent for the depositors. See *Gulf Coast State Bank v. Emenhiser*, 562 S.W.2d 449, 451 (Tex.1978); *National Bank of Tyler v. Cinco Exploration Co.*, 540 S.W.2d 292, 295 (Tex.1976).

■ The right of a collecting bank to charge back an item which cannot be collected is governed by Section 4.212(a). This section provides:

If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank *or otherwise* (emphasis added) to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account or obtain refund from its customer ....

The depositors contend that the settlement did not fail by reason of dishonor because a settlement was made when the Mexican bank paid the check in the full

---

1. Statutory references are to Tex.Bus. & Comm.Code Ann. (Vernon's 1968).

2. Although the official comments to the Code were not enacted by the Legislature, they serve as a valuable aid in construing the statutory language. *In re Augustin Bros. Co.*, 460 F.2d 376 (8th Cir. 1972); *In re Yale Exp. Sys., Inc.*, 370 F.2d 433 (2d Cir. 1966); *Simmons v. Clemco Indus.*, 368 So.2d 509 (Ala.1979); *see* 2a C. Sands, Sutherland Statutory Construction § 48.11 (4th ed. 1973).

amount of 562,500 pesos, so this section is not applicable. We reject that contention. Comment 2 states:

> The causes stated are illustrative; the right of charge back or refund is stated to exist whether the failure to receive final payment in ordinary course arises through one of them 'or otherwise.'

We hold that the Section includes a partial failure to receive payment as well as a complete failure. The Bank, as agent for the depositors, was entitled to a charge back against the provisional settlement with the depositors. *Emenhiser, supra.*

■ Section 4.212(f) of the Code is determinative of the amount of the charge back. That section provides:

> If credit is given in dollars as the equivalent of the value of an item payable in a foreign currency the dollar amount of any charge-back or refund shall be calculated on the basis of the buying sight rate for the foreign currency prevailing on the day when the person entitled to the charge-back or refund learns that it will not receive payment in ordinary course.

The evidence shows that Banco Nacional de Mexico paid the check on September 6, by remitting $27,463.87, which was $17,536.13 less than the credit given the depositors in the form of a certificate of deposit. Austin National Bank did not learn of the amount until September 24, but the value of the peso was not shown to have changed between those two dates so the depository bank was entitled to a charge back of $17,536.13 against the depositors.

Accordingly, we affirm the judgment of the court of civil appeals.

DENTON, J., notes his dissent.

GREENHILL, C. J., not sitting.